Our next case is McGowan v. Inova Home Health. Ms. Slater, we'll be glad to hear from you. Good morning, Your Honors. Can you hear me okay? May it please the Court, my name is Tamara Slater. I represent the plaintiff appellant, Ms. Tartaro-McGowan, in this matter. This case should be reversed because there is enough evidence for a reasonable jury to find that the employer did not honestly believe that it needed all nurses, all internal staff, to perform direct patient care field visits during the pandemic. There's also enough evidence that Ms. Tartaro-McGowan was actually terminated because she requested a reasonable accommodation and because of her disability. Prior to oral arguments, the Court asked the parties to consider Belinsky v. American Airlines' 2019 Seventh Circuit decision. I'd like to start out by... I thought Ms. McGowan at some point, in a deposition or somewhere, agreed that during the pandemic it was all hands on deck. Your Honor, that is correct. It was all hands on deck. There was a need for nurses to go out in the field and to perform direct patient care field visits. What the record also shows is that there were at least two other... So there were two nurses that requested an accommodation for this new requirement that the internal staff perform direct patient care field visits. There were two other staff who did not request an accommodation, who were not disabled, and also performed zero direct patient care field visits before the end of June 2020 when Ms. Tartaro-McGowan was fired. There were at least two other nurses that performed very, very few. In one case it was one, and in one case it was four field visits. And so the question is the difference between what the employer... And your client did zero. That's correct. My client and one other nurse who requested reasonable accommodations performed zero, and two other nurses performed zero by the end of June 2020. They didn't request accommodations, they just didn't do them. That's correct. They didn't acknowledge that they weren't doing it. They didn't provide a reason for not performing the field visits. They simply were hoping to fly under the radar, and they do seem to have flown under the radar until Ms. Tartaro-McGowan and the only other nurse who requested an accommodation were fired. Can I ask you a question, counsel? This is just kind of a confusing case. So the district court kind of went out of its way to decide not whether this was an essential function during COVID, but to say it was an essential function the whole way through, and never separately considered, well, but was it an essential function during COVID? So you want us to sort of address that question for the first time and say on that question there's a material dispute of that. I guess the other thing we could do is send it back to the district court and say, hey, you didn't ask whether maybe there was a dispute of fact pre-COVID, but you never asked whether once COVID started there was a genuine dispute of fact. Your Honor, that is a correct summary of the case below, and, in fact, never came up. The defendant did not raise that defense that it was a new essential function. They stood on the argument that it was always an essential function. And our position, Mr. Tara McGowan never performed direct patient care field visits in the nearly three years that she was in this role prior to COVID. There's really no evidence that she was- I don't think they don't really contest that, though. That's correct, Your Honor. So why wasn't this an essential function? I'm sorry? Why isn't this performing where necessary, direct field nursing, an essential function, regardless of COVID? Your Honor, it's not an essential function for a few reasons. So, as you know, there are seven factors that courts consider when determining whether a function is an essential function. One factor is the employer's position on the question, but that's only one of the seven factors. It is a factor that Mr. Tara McGowan never performed that function. One of the factors is whether the impact of- Courts seem to- of those factors, which I believe were not meant to be exclusive, courts seem to weigh that first factor a little bit more than some of the others. Your Honor, I believe that's where some of the evidence that I already summarized briefly becomes relevant because courts say specifically that, yes, it matters what the employer says, but it- but the courts also need to assess how the employers behave, right? They can't simply say, yes, this is an essential function. They need to act in a manner that demonstrates that it is an essential function. And so the uneven enforcement of this function is- is evidence that weighs against the employer. Even though they say it was essential, they never acted in a manner that indicates that they really believed that it was essential. And so I just want to make sure I'm remembering this right. You did not- your client did not move for summary judgment, right? That's correct. Your argument is just this is a jury question. There's evidence going both ways. Let a jury sort it out. That is correct, Your Honor. You started to- since we asked you to address Belinsky and you started to, could you just- could you say whatever you wanted to say about Belinsky? I think I know based on what you said before what your position is going to be on it, but I want to give you a chance to say what you want to say about it. Sure, thank you. Yes, I believe that- So the unequal enforcement is one important point regarding Belinsky. There were two- there were two other cases that the Belinsky court considered. Miller v. Illinois Department of- When you say unequal enforcement, remind us what exactly you mean by that. Yes, Your Honor. So on Joint Appendix 742-55, we have a chart that was provided by the defendant, by the employer, that shows who performed direct patient care field visits during the pandemic period. And so there were four nurses who performed zero direct patient care field visits as of the date of Ms. Tartaro-McGowan's termination. Of those four, two of them were fired, the two that requested a reasonable accommodation and the two that had a disability. And two were not disciplined in any manner that we're aware of. Which two were those? I'm sorry? Which two? Sarah McLean and Tiffany White are the two who performed zero direct patient care field visits. There were two others- Did they do any after your client was terminated? They did begin performing field visits after Ms. Tartaro-McGowan was terminated. They did begin. I don't believe they met the six field visits per week requirement. And Ms. Deirdre Witherspoon was another individual who had only performed four as of Ms. Tartaro-McGowan's termination at the end of June. And Kathleen Nesterick, who was Ms. Tartaro-McGowan's supervisor, performed only one field visit in the entire period. Another- So what I want to address a little bit was in Belinsky, they talk about a case Miller v. Illinois Department of Transportation. This involved a bridge crew and an individual who, at one point, was no longer able to perform work from a high elevation. And what the court found was that this history of divvying up tasks at least created an issue for a jury to decide whether performing work from a high elevation was an essential function. I think that's very similar to Ms. Tartaro-McGowan's situation. This is a question for a jury. There's a dispute because what we see is that not all nurses were performing these direct patient care field visits. It appears as though about 80% of the field visits in that chart that I cited to, Joint Appendix 742-55, were performed by a single nurse. These field visits, these patient care field visits, did seem to be covered, and they were being covered by other nurses. And that makes this function much more like the function being addressed in Miller v. Illinois Department of Transportation, where it was a question for a jury. We believe that there is a dispute of material fact as the essential function. The only last question I just have about Belinsky is, do you have any quarrel with the abstract proposition that the essential functions of the job can change over time? I do not, Your Honor. In addition to a reasonable accommodation claim, there's also a retaliation claim and a discrimination claim. Before you move on, let me ask you about that part. As I understand the evidence here, which I think is uncontested, your client's request for reasonable accommodation was, I'm just not going to do this. And Inova said, look, you can screen all these people. You can go at the beginning of the week, at the end of the week, take a break, talk to people about what the house is like, so you can alleviate in your own mind your concerns about whether or not it would put stress on your knees. And her response was, I'm not doing that, and I'm not going to give you any example of what I am going to do. Why isn't that just per se unreasonable on her part? Your Honor, thank you for that question. Because Ms. Hurtado-McGowan had over 20, I believe maybe even over 30 years of experience doing direct patient care. She was the most experienced individual. She loved doing that work, and she simply knew that it was not reasonable. It was not safe for the patients. It was not safe for her to put herself in that position. So out of all the visits they were going to make, there wasn't one that she could do? Your Honor, based on her many decades of experience, she knew that there was no screening that was able to ensure that there was not going to be some sort of crisis, some sort of need that she was going to be unable to manage that would either harm the patient care that she was able to provide or put her in physical harm. And so, yes, there were opportunities to screen these patients, to find out about the layout of their homes. Based on her extensive experience, she did not. So now I suppose I will say reading the facts and reading the record, it does seem amenable to another interpretation. The other interpretation is that your client was very, very conscious about COVID and just simply did not want to do home visits. But I guess, and that would, but I assume your argument is that's a jury question, right? Like, I mean, there is a way, and I presume one of the things they could argue at trial is that's not really true. It was really true is that she had just decided she didn't want to do home visits because she didn't want to do home visits or because of COVID, because of perhaps legitimate concerns about COVID. Lots of people didn't want to go to other people's houses during the pandemic. But I guess your response is none of that goes to whether they get summary judgment. They're welcome to make those arguments before a jury. Your Honor, yes, I would agree with that. And I would also say there's nothing in the record indicating that COVID was her actual concern. She was never asked, and we never disputed, that supervisory field visits were a part of her job function, was an essential function. So she had performed a few supervisory field visits. So that would have put her in patients' homes. The objection was going alone, was going into these homes alone without anybody else. I don't believe that there's any record of her being asked to perform supervisory field visits. Can I ask you the one part, well, one part of your argument that strikes me as, are you still advancing the argument that just because this accommodation was offered to others, it's per se not reasonable? That struck me as a weird claim. Your Honor, that was. Like it's adequate. I mean, I can see it's not adequate. But like the fact that everybody gets it, I don't see why that would, ipso facto, disqualify something as a reasonable accommodation. Your Honor, I think it is correct that a policy that exists could mean that an accommodation is not necessary. And there was a little bit of nitpicking about whether that meant it was not accommodation. It felt disingenuous at the time, right? They were saying, well, look, this is being offered to everybody. But yes, I agree, Your Honor, that there is case law that says just because the policy is available to other people does not mean it couldn't qualify and indicate that the individual did not need some additional accommodation. Can I ask you a question about the way the different pieces of this case fit together? If you assume just entirely hypothetically that I thought whether this was an essential function, whether doing these solo direct care visits was an essential function, I thought that was a jury question. If I thought that, I would vacate the grant of summary judgment on the reasonable accommodation claim. And it looked to me like I would also vacate the grant of summary judgment on the other claims because the district court's reasoning, although the district court goes through a lot of elements of those other claims, it's all pretty much bound up with the idea that, look, this is the job and she wouldn't do it. And so that's the non-protectual reason for firing her. But that's where I am just in trying to think through this hypothetical path. But tell me what you think follows from a finding that this was a jury question on essential function. Yes, Your Honor, I agree with you. The district court basically said that because the judge had found that Mr. Taramagown wasn't a qualified individual with a disability, that that eliminated the other two claims. So I agree. I believe we find that the essential function question is for a jury, which, of course, I'm arguing that I do believe there's a disputed fact. I believe that that would result in a remand on all three of the claims. And with my final 15 seconds, if I might just add on the retaliation claim, there's a piece of evidence that I didn't indicate, which is Mr. Taramagown's supervisor characterized her request for a reasonable accommodation as an adamant refusal, which is additional evidence that goes towards retaliation and discrimination, sort of discriminatory and retaliatory. All right. Any further questions? You have some rebuttal time. Mr. Wolfe? Thank you, Your Honors. May it please the Court. My name is Andrew Wolfe. I'm an attorney at Hahn-Losier and Parks, and I represent the Respondents' NOVA Home Health and Alternate Solutions Health Network. For the purposes of this appeal, we'll assume that we assumed at summary judgment that the employers were one and the same, so there's no material difference, at least for purposes of summary judgment, between the two entities here. The context of this case is very important. I don't want to take us back there, but this is the time when the world shut down, when schools were closing, when there were stay-at-home orders imposed. This is the very beginning stages of the COVID-19 pandemic. Mr. Wolfe? Sorry. So the district court did not, though, find that this became an essential function with COVID. The district court sort of expressly said, no, no, what I'm finding is that it was an essential function all along. Did you guys argue in front of the district court that it became an essential function when COVID started? The argument presented to the district court was that it was always an essential function of the job from the beginning, but that the essential function was based on operational needs for the employers. So if in the past there was no operational need, then direct care patient business would not have been required. But if at a certain point, such as in a pandemic, operational needs mandated that they would need to go into the field, then that was considered an essential function. So the existence of COVID is not what made it an essential function. You were using COVID just sort of as a way of explaining, almost like a defense to the argument, like, well, you never made her do it. For two years, she never had to do it. You were using COVID to kind of address that. Like, yeah, well, we didn't need her to for two years, but then we did. Correct. I would think of it kind of like a flight attendant is trained on how to use the inflatable devices. Probably none of them hopefully don't have to use the inflatable devices, but you hope when there's a water emergency that the flight attendant will be able to operate the flotation devices. I'm sorry, I will let this go on one second. Just procedurally, I do find this case very complicated. Assuming only hypothetically, I'm just trying to map out all the paths. If I thought whether this was an essential function from day one was a jury question. I would have to vacate because no one put before the district court the idea that, well, maybe it wasn't an essential function before, but it became an essential function when COVID came. Well, I think you can affirm on any grounds, including grounds that were not necessarily considered by the district court. Or offered to the district court. I think the problem is sort of a forfeiture problem. If nobody made that argument to the district court, we don't usually affirm on those grounds. Well, I think you can look at this as the argument before the district court was always that it was an essential function as a result of the pandemic. So, the argument before the district court was that we considered an essential function all along the way, that you may be required to do it if you needed it, and the pandemic was a reason why it was there. So, I think if you, the relevant time period, and I think if you look at the Belinsky case, the relevant time period is the time period when the adverse employment action was taken, or when the reasonable accommodation was denied. But where would be the place in the appendix that we would find a specific argument on this point? That once COVID hit, this was clearly an essential function. The employer's argument was that it was always an essential function, but then it became necessitated by... Was there a time when the employer, there's evidence that says, regardless, COVID made it an essential function? There isn't an email that words it that way. There is an email that announces that all hands are on deck and that every in-office person would be required to perform direct care patient visits to deal with the staffing shortage. So, I think that's the point when the employer announces it to everyone and then repeatedly clarifies it to in-office. Whose email is that? I believe it is Hannah Heyer's email. Can I just ask you a framing question that I think is implicit, but I want to make sure that we're all on the same page. Do you agree that either under this court's decision in Jacobs, or in general, or as the Seventh Circuit held in Belinsky, whether something is an essential function of the job is a question of fact? It is a question of fact, but we believe that it, and that's what Belinsky says, but we believe that the undisputed facts establish that it is clearly an... No, totally, but it's a question of fact for a fact finder, not a question of law to be decided by the court as a matter of law. Correct. Okay. What do I do with the fact that the district court, I mean, in its opinion, it's very expressly weighing conflicting evidence. You know, there's evidence on both sides of this, and we keep referring to the factors from the regulation, but they're not factors. It's a list of evidence of whether a particular function rises to the level of fundamentals, seven kinds of evidence. And the district court quite openly is saying, well, there's evidence on both sides of this question, but as I weigh it out, it's enough for fundamental. I don't see how a district court can do that on a question of fact. So I read the district court's opinion as deciding which facts are undisputed and then saying that some of those undisputed facts support one factor while most of the other undisputed facts support the other side. But if it's a question of fact, district courts aren't allowed to do that. The district court did not resolve any undisputed questions of fact. No, but it's not just that the historical – that's the reason I asked you the question. It's not just the historical facts underlying the determination that's a question of fact. This is like the negligence standard, right, where the ultimate conclusion, I think, is also a question of fact. And the district court says, well, some of the undisputed facts point this way, some of the undisputed facts point this way. It would be as if the district – I mean, I think you could actually map this on really nicely to a negligence case where the court says, like, there's some evidence the defendant was negligent and some evidence the defendant wasn't negligent, and negligence is in all other things being equal standard, and I conclude that under these facts here, the defendant wasn't negligent. And look, you're allowed to do that sometimes if there's only one reasonable inference, but why am I wrong in seeing that analogy? You also can't say there's evidence on one side, there's evidence on the other side. The evidence isn't disputed, so I don't mean it's disputed evidence on one side. There's evidence of this and there's evidence of this, and none of that evidence is disputed, and therefore judgment for the defendant because I conclude that under all the circumstances, I don't think there's negligence. I don't think that would be allowed in a negligence case, and I struggle to see why that's not analogous to what the district court did here. Well, a couple of things. First, I think there is one legal point that as a matter of law under the ADA that the first factor is to be weighed most heavily and that courts are to defer to that. So I think that there is some guidance there. Second, I do believe that there is evidence of summary judgment being upheld in favor of employers. I think the ellage versus loaf. That's where you can say there is no conflicting evidence. All of the undisputed evidence points in one direction or at least substantially enough that no reasonable jury could find this ultimate question of fact the other way. It just looks to me like in this case where on the one hand, it's in the description. There's some testimony from the employer's witnesses that, oh, yeah, we thought this was essential. On the other hand, she didn't have to do it for two years. She says there's a disputed fact as to what she was told when she took the job. She says she was told you're not going to have to do this. That doesn't look to me, and I don't think the district court treated it like, well, a jury could only – could resolve this question differently. I don't think the district court weighed in pretty expressly competing evidence without making any kind of a finding that there was only one possible way to resolve this dispute. And so it just looks like there's kind of a CIVPRO problem here. I understand the point. The district court did say when it was outlining the standard for summary judgment that it was considering whether a reasonable jury could conclude in favor of the plaintiff. I agree that that's not proximally located to the section of the opinion related to the factors. But I think the factors come down to – there was one factor that I believe that the district court found was in favor in a seven-factor test, and it wasn't the most relevant factor. You can call it evidence because that's what the regulation says. So there was one piece of evidence that weighed in favor of the employer, and then the district court also noted undisputed evidence going the other way and said, well, when I weigh these pieces of evidence, here's how I come out. But why isn't that the jury's job? I think in this case the undisputed evidence established that no reasonable jury could conclude in favor of the plaintiff. I do want to point out separately that there is a separate and independent basis on which the district court decided the reasonable accommodation claim and decided that the plaintiff was not a qualified individual with a disability, and that's that she refused a reasonable accommodation that was offered by the employer. And under the ADA, it's clear that an individual loses their status, if they had one previously, as a qualified individual with a disability if they refuse a reasonable accommodation that's offered by the employer. May I ask you very quickly, then I'll stop, just my endless path questions, assuming hypothetically for the sake of argument, I agreed on that, that the district court was right, that that's not a jury question. What do I do with the other claims where the district court, so that the reasonable accommodation claim fails, but then I have the intentional discrimination and retaliation claims where the district court relied either expressly or it's all intertwined together on its first ground for deciding the reasonable accommodation claim that this was an essential function. So then what do I do with those claims? I think the essential function finding is not the only way you get to the fact that she doesn't meet the first factor for the intentional discrimination claim because of the refusal of a reasonable accommodation. That would also render her not a qualified individual with a disability. And I think it's clear from the record that they did offer her a reasonable accommodation. With regard to the, I don't know that you necessarily need to find that it's an essential function to find that the fact that she didn't performant is a legitimate non-discriminatory, non-retaliatory reason. And I would point to the comparators in support of that. Every internal office employee who was asked to perform direct care patient visits did it except for two employees. The only two employees that did not perform it lost their job. The remaining employees all retained their job. She argues that McLean and White didn't perform any of those visits until after the date Ms. McGowan was terminated. I think she agrees that they did perform after that. Is it relevant that they had not performed before her termination date? I don't think it's particularly relevant. And if you read the deposition transcripts, I think the difference between them is that they indicated that they were willing and that they would be signing up to do their patient care visits. And that's why they were not given the deadline that Ms. Tartaro-McGowan was given. I also would point out that the second person, Emma Marshall, who opposing counsel, is characterizing as being also a qualified individual with a disability. There isn't any record evidence to support the conclusion, and that is what the district court found, that she is also a qualified person with a disability. So the general rule that every internal office employee was required to perform direct care patient visits. While Marshall was terminated. That's correct. Can I ask you about the retaliation claim? I think the point that your friend on the other side mentioned towards the end. So there's this statement in the record by the former manager that says, you know, basically, why does she have to do it and other people weren't made to do it? Quote, because Laura adamantly refused, the others didn't refuse. Now that strikes me as subject to at least to multiple interpretations. But one interpretation is because she was the pain in the butt who requested an accommodation under the ADA and the other ones didn't. Again, I'm sure you don't agree with that interpretation. But why isn't that at minimum a reasonable enough interpretation for purposes of allowing retaliation claim to get past summary judgment? That literally the former manager said because she exercised her rights under the ADA. Well, I disagree with the characterization there. I don't. And I think you look, you may have a plausible argument in front of a jury that that's not in context what was being said. But why couldn't a jury read it that way? I think because of I think because of the comparators, they ultimately required everyone else to do it. And the timing of the we don't need comparators when there's direct evidence, when someone literally says, I fired her because I mean, again, I know this isn't the exact statement. But if an employer literally said, I fired her because she requested a reasonable accommodation. We are long past the point where I need comparators for deciding whether they get past summary judgment. Right. That's correct. That's a fair statement. I think it's I think that's not the context that we have here because the employer was offering some for was offering what we characterize as two accommodations. The first is that she could space out her patient visits. And the second is that she could review her patient visits or she could review and select her patient visits in advance. Those, I think, are both very reasonable because she could determine which patient visits would cause stress to her knees, would require bending or squatting. And that would enable her to perform what the employer characterized as an essential function of her job. They repeatedly asked her if she had any alternative accommodations that she could suggest and that they could consider. And she did not provide any alternative accommodations. So her, I mean, from the employer's perspective, the interactive process ended when Ms. Tartaro-McGowan would not participate anymore in light of being offered what was clearly a what I think is clearly a reasonable accommodation. But I guess your colleague would say, well, the accommodation wasn't reasonable because given the nature of the work, like there are going to be unexpected things that happen during these visits. And those might require her either to hurt herself physically or to leave a patient, you know, like bleeding out on the floor or something. And although you might, again, have an excellent argument to make to a jury as to why this is perfectly reasonable under the circumstances, why is that not something for a jury to look at? Well, because Ms. Tartaro-McGowan conceded that those were concerns before, when those were concerns at any point while she was nursing before, before she took on this role. And she conceded that she could call 911, that she could ask for help from someone else that was in the residence, or that she could call on a nurse for backup to aid her in those. And I believe she concedes that all of those options were available to her during the pandemic when she was being asked to perform those direct care patient visits again. You would just say no reasonable jury could find this accommodation unreasonable? I would say that, but I think that you're getting some clear admissions from the plaintiff in that regard, that all of those options, things that she had previously done before were there. And there was never an explanation for why this was different than before when she previously had to rely on those. So, to talk briefly about the Belinsky case. The Belinsky case, I think, stands for the proposition, both the proposition that the essential functions of a job can change over time, but also the fact that the essential functions of a job are context-specific. So, I think the district court's consideration of the job description, of the employer's characterization or consideration of this as an essential function, I think all of that is context-specific. So, even if the argument were not raised as clearly before the district court as may have been ideal under the Belinsky decision, I think Belinsky still stands for the proposition that you must consider the context at the time of the alleged refusal for an accommodation and not at any time before when there weren't stressors on the home health agency, or at any point after when the home health agency had recovered from the staffing shortage that it was suffering from. Let me ask you in your main time to talk about the testimony from Virginia Vasquez about that it was unnecessary for her to be trained on the software used for in-person visits. Why isn't that another piece of evidence? I mean, so the argument now is it was always an essential function, and the pandemic confirms it, and it rebuts the idea. But why isn't that pretty strong evidence that it wasn't an essential function, that literally someone with the same job title as the plaintiff was told, you don't need to be trained on this software because that's not something you do? I'm referring to JA578 here. I may be remembering incorrectly. I don't think that Virginia Vasquez had the exact same title as a clinical manager. I trust you on that. That may be different, but I blanked on your question. Why, if someone who had an analogous position to the plaintiff, without saying that she had the exact same position, asked, there's a software, as I understand, that's unique for these home visits. And someone who's allegedly comparable to the plaintiff asks, do I need to be trained on the thing that lets me do these primary in-home visits? And she's told, you don't need to be trained on that, seemingly because you don't do those. That's because everyone was always capable of performing a paper visit, and everyone was trained to perform a paper visit. So there are two sides of the software. There's the management side, which the plaintiff was primarily trained on. Then there's the treatment side, which everyone, including the plaintiff at least, was supposed to be at the training sessions for going out into the field after that. But at all times, everyone knew how to create a paper visit. So the software is just a mechanism to put in what happened in the visit and all of that stuff. They were always able and trained to use paper, and then that could be put into the software at a later date. So that's really just a software input question versus a barrier to being able to perform a direct care patient visit. Thank you. All right. Mr. Wolf, you got anything else for us? Nothing further. Thank you. All right. Thank you. Ms. Slater, you have some rebuttal time. Yes, Your Honors. Thank you. I would like to start by just reading a couple of the lines from the district court's decision just to reaffirm that the district court judge did appear to be weighing evidence. Not only did the district court find that one of the factors or types of evidence weighed in favor of finding that the direct patient care field visits were not an essential function, but in fact, for every single category, the judge says this factor points toward or cuts against or tips in favor of. So even when the court was finding that there was evidence that supported one position or another, it was always tentative. There was never an assertion that these were undisputed facts and that it was an undisputed… Let me ask you a more theoretical question. Let's say you've got these seven non-exclusive factors and the district court finds six of them weigh in favor of one party or the other. Uncontested evidence on those six. The seventh one is in equipoise. So is that always a jury question then? Your Honor, just to clarify, you're saying if the underlying facts are undisputed and… It's true for six of the seven, but the seventh one is a jump ball. So what I'm asking is, does that always make it a jury question? Why or why not? Your Honor, I believe it would be. I do think that… So one of the categories involves a union, so that often gets eliminated. So as long as it's not that type of equipoise, right? If one of the factors could be weighed more heavily by a reasonable jury, I do believe that a reasonable jury could find that one of the factors or one of these categories is determinative. And therefore, if there is one that is unclear, that is disputed, I do believe, Your Honor, that that would be a jury decision. A few additional points I would like to clarify with regards to Ms. Emma Marshall, who's the other nurse who requested an accommodation. There's no dispute that she did request an accommodation. We did not present her as a second plaintiff, and so we did not get into all of the evidence about whether she was a qualified individual with a disability. For the purposes of a retaliation claim, she did request a reasonable accommodation, and she should be considered a comparator in that sense. The final point… There's one additional point that I would like to raise with the Court about whether the employer actually considered this essential function to be one that was going to be applied uniformly in the way that the new function was applied uniformly in Belinsky, and to get a little bit of whether this really was an urgent need that arose as a result of the pandemic. In the record, there are at least three nurses who requested to perform direct patient care field visits and were denied the opportunity to do so. The explanations that were provided was that they were remote workers, even though they were local. They were remote workers, and therefore the requirement didn't apply to them. Okay, that's fine, right? They're not going to be disciplined for not performing the field visits. But if it was such an urgent need, if there was really a patient care need that was not being met, they certainly would have been provided with the tools. Regarding at least one of those individuals, Ugo Agwu, and this is discussed in Joint Appendix 461-63 by Kathleen Nestrick, not only was she a remote worker, but she hadn't been fully trained. And so if there was really a large need for additional nurses to be in the field, this is something that, for example, perhaps Ms. Tartaro-McGowan, with 25-plus years of experience doing direct patient care field visits, she could have provided some sort of support and some sort of training. She was a supervisor. She was certainly in a position. And so there are a number of pieces of evidence that really undermine the sort of urgent need and the argument that there were patient care needs that were not being met. With that final time, I ask that the Court reverse and remand, unless there are any further questions. I think we're good. I want to thank counsel for their arguments. In this case, we're going to come down and greet counsel, and then we're going to take a very short recess. This Honorable Court will take a brief recess.
judges: G. Steven Agee, Pamela A. Harris, Toby J. Heytens